




EXHIBIT
C

## "AS IS" Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

1* **PARTIES:** _____ Resco International LLC _____ ("Seller"),
2* and _____ Bernard Combe and Sylvie Combe or Company Own by the Buyer _____ ("Buyer"),
3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal
4  Property (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale
5  And Purchase and any riders and addenda ("Contract"):
6  **1. PROPERTY DESCRIPTION:**
7*  (a) Street address, city, zip: _____ 8967 SW 225 ST 0, Cutler Bay FL 33189 _____
8*  (b) Property is located in: _____ Dade _____ County, Florida. Real Property Tax ID No: _____ 36-60-16-016-2170 _____
9*  (c) Legal description of the Real Property: LAKES BY THE BAY GEEPB 164-043 T-22075 LOT 4 BLK 23 LOT
10* SIZE 1832 SQ FT COC
11  together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
12  attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded below.
13  (d) Personal Property: The following items owned by Seller and existing on the Property as of the date
14  of the initial offer are included in the purchase ("Personal Property"): (i) range(s)/oven(s), dishwasher(s),
15  disposal, ceiling fan(s), intercom, light fixtures, rods, draperies and other window treatments, garage door
16  openers, and security gate and other access devices; and (ii) those additional items checked below. If
17* additional details are necessary, specify below. **If left blank, the item below is not included:**

| | | | |
|---|---|---|---|
| ☒ Refrigerator(s) | ☒ Smoke detector(s) | ☐ Pool barrier/fence | ☐ Storage shed |
| ☒ Microwave oven | ☒ Security system | ☐ Pool equipment | ☐ TV antenna/satellite dish |
| ☒ Washer | ☐ Window/wall a/c | ☐ Pool heater | ☐ Water softener/purifier |
| ☒ Dryer | ☐ Generator | ☐ Spa or hot tub with heater | ☐ Storm shutters and |
| ☐ Stand-alone ice maker | | ☐ Above ground pool | panels |

18  The only other items of Personal Property included in this purchase, and any additional details regarding
19* Personal Property, if necessary, are:_____
20* _____
21  Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
22* (e) The following items are excluded from the purchase:_____
23* _____

24* **2. PURCHASE PRICE** (U.S. currency):.................................................................. $ _____ 158,000.00
25*  (a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** $ _____ 31,600.00
26  The initial deposit made payable and delivered to "Escrow Agent" named below
27* **(CHECK ONE):** ☐ accompanies offer or ☐ is to be made upon acceptance (Effective Date)
28*  or ☐ is to be made within _____ (if blank, then 3) days after Effective Date
29* Escrow Agent Information: Name: _____ Southern Trust & Title Co Pozo-Diaz & Pozo, P.A. _____
30* Address: 9260 Sunset Drive, Suite 119 Miami, FL  33173 Phone: 305-412-7360
31* E-mail: _____ SPerez@pdplawyers.com _____ Fax: 305-412-7301
32* (b) Additional deposit to be delivered to Escrow Agent within _____ (if blank, then 3)
33* days after Effective Date..........................................................................$ _____ 0
34  (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
35* (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ......... _____ 0
36* (d) Other: _____ ......$ _____ 0
37  (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
38* transfer or other COLLECTED funds...................................................................$ _____ 126,400.00
39  NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.
40  **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
41*  (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before _____
42* _____ this offer shall be deemed withdrawn and the Deposit, if any, will be returned to Buyer.
43  Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day the
44  counter-offer is delivered.
45  (b) The effective date of this Contract will be the date when the last one of the Buyer and Seller has signed or
46  initialed this offer or final counter-offer ("Effective Date").
47  **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
48  and the closing documents required to be furnished to each party pursuant to this Contract shall be delivered
49* ("Closing") on _____ TBD _____ ("Closing Date"), at the time established by the Closing Agent.

Buyer's Initials _X SC_   x _BC_       Page 1 of 10       Seller's Initials _____ _____
FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar.  All rights reserved.

formsimplicity

50  **5. EXTENSION OF CLOSING DATE:**
51  (a) If Closing funds from Buyer's lender(s) are not available at time of Closing due to Truth In Lending Act (TILA)
52  notice requirements, Closing shall be extended for such period necessary to satisfy TILA notice requirements,
53  not to exceed 7 days.
54  (b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes:
55  (i) disruption of utilities or other services essential for Closing, or (ii) Hazard, Wind, Flood or Homeowners'
56  insurance, to become unavailable prior to Closing, Closing will be extended a reasonable time up to 3 days
57  after restoration of utilities and other services essential to Closing, and availability of applicable Hazard, Wind,
58  Flood or Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not
59*  occurred within _____ (if left blank, 14) days after Closing Date, then either party may terminate this
60  Contract by delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby
61  releasing Buyer and Seller from all further obligations under this Contract.
62  **6. OCCUPANCY AND POSSESSION:** Unless otherwise stated herein, Seller shall at Closing, have removed all
63  personal items and trash from the Property and shall deliver occupancy and possession, along with all keys,
64  garage door openers, access devices and codes, as applicable, to Buyer. If Property is intended to be rented or
65  occupied beyond Closing, the fact and terms thereof and the tenant(s) or occupants shall be disclosed pursuant
66  to STANDARD D. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to Property from
67  date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have
68  accepted Property in its existing condition as of time of taking occupancy.
69*  **7. ASSIGNABILITY: (CHECK ONE)** Buyer ☐ may assign and thereby be released from any further liability
70*  under this Contract; ☐ may assign but not be released from liability under this Contract; or ☐ may not assign
71  this Contract.

**FINANCING**

73  **8. FINANCING:**
74*  ☒ (a) Buyer will pay cash or may obtain a loan for the purchase of the Property. There is no financing
75  contingency to Buyer's obligation to close.
76*  ☐ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☐ conventional ☐ FHA
77*  ☐ VA loan on the following terms within _____ (if blank, then 30) days after Effective Date ("Loan
78*  Commitment Date") for: **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate loan in
79*  the principal amount of $ _____ or _____ % of the Purchase Price, at an initial interest rate
80*  not to exceed _____ % (if blank, then prevailing rate based upon Buyer's creditworthiness), and for a
81*  term of _____ years ("Financing").

82*  Buyer will make mortgage loan application for the Financing within _____ (if blank, then 5) days after
83  Effective Date and use good faith and diligent effort to obtain a written loan commitment for the Financing
84  ("Loan Commitment") and close this Contract. Buyer shall keep Seller and Broker fully informed about
85  the status of mortgage loan application and Loan Commitment and authorizes Buyer's mortgage broker and
86  Buyer's lender to disclose such status and progress to Seller and Broker.

87  If Buyer does not receive Loan Commitment, then Buyer may terminate this Contract by delivering written
88  notice to Seller, and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
89  further obligations under this Contract.

90  If Buyer does not deliver written notice to Seller of receipt of Loan Commitment or Buyer's written waiver of
91  this financing contingency, then after Loan Commitment Date Seller may terminate this Contract by
92  delivering written notice to Buyer and the Deposit shall be refunded to Buyer, thereby releasing Buyer and
93  Seller from all further obligations under this Contract.

94  If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not
95  thereafter close, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default;
96  (2) Property related conditions of the Loan Commitment have not been met (except when such conditions
97  are waived by other provisions of this Contract); (3) appraisal of the Property obtained by Buyer's lender is
98  insufficient to meet terms of the Loan Commitment; or (4) the loan is not funded due to financial failure of
99  Buyer's lender, in which event(s) the Deposit shall be returned to Buyer, thereby releasing Buyer and Seller
100  from all further obligations under this Contract.
101*  ☐ (c) Assumption of existing mortgage (see rider for terms).
102*  ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

Buyer's Initials  *SC*    *BC*        Page 2 of 10        Seller's Initials  _____  _____
FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar.  All rights reserved.

⁑ formsimplicity

**CLOSING COSTS, FEES AND CHARGES**

103
104 **9.** **CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
105*     (a) **COSTS TO BE PAID BY SELLER:**

| | |
|---|---|
| • Documentary stamp taxes and surtax on deed, if any | • HOA/Condominium Association estoppel fees |
| • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked) | • Recording and other fees needed to cure title |
| • Title search charges (if Paragraph 9(c)(iii) is checked) | • Seller's attorneys' fees |
| • Other: _____ | |

106       If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
107       a sum equal to 125% of estimated cost to meet the AS IS Maintenance Requirement shall be escrowed at
108       Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall
109       pay such actual costs. Any unused portion of escrowed amount shall be returned to Seller.

110*     (b) **COSTS TO BE PAID BY BUYER:**

| | |
|---|---|
| • Taxes and recording fees on notes and mortgages | • Loan expenses |
| • Recording fees for deed and financing statements | • Appraisal fees |
| • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked) | • Buyer's Inspections |
| • Survey (and elevation certification, if required) | • Buyer's attorneys' fees |
| • Lender's title policy and endorsements | • All property related insurance |
| • HOA/Condominium Association application/transfer fees | |
| • Other: _____ | |

111*     (c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if blank, then 5) days prior to Closing Date, a title
112       insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as
113       exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see
114       STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title
115       insurance covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after
116       Effective Date. The owner's title policy premium and charges for owner's policy endorsements, title search,
117       and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set forth below
118       (**CHECK ONE**):
119*       ☐ (i) Seller will designate Closing Agent and pay for Owner's Policy and Charges (but not including charges
120       for closing services related to Buyer's lender's policy and endorsements and loan closing, which amounts
121       shall be paid by Buyer to Closing Agent or such other provider(s) as Buyer may select); or
122*       ☐ (ii) Buyer will designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
123       services related to Buyer's lender's policy, endorsements, and loan closing; or
124*       ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller will furnish a copy of a prior owner's policy
125       of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence,
126       which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and
127       (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's
128       owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than
129*       $ _____ (if blank, $200.00) for abstract continuation or title search ordered or performed by Closing
130       Agent.
131     (d) **SURVEY:** At least 5 days prior to Closing, Buyer may, at Buyer's expense, have the Real Property surveyed
132       and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a
133       copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
134*     (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☐ N/A will pay for a home warranty plan issued by
135*       _____ at a cost not to exceed $_____. A home
136       warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
137       appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
138     (f) **SPECIAL ASSESSMENTS:** At Closing, Seller will pay: (i) the full amount of liens imposed by a public body
139       ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
140       ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
141       improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
142       imposed on the Property before Closing. Buyer will pay all other assessments. **If special assessments may**
143       **be paid in installments (CHECK ONE):**
144*       ☐ **(a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after**
145       **Closing. Installments prepaid or due for the year of Closing shall be prorated.**
146*       ☐ **(b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.**
147       **IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.**
148       This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
149       (CDD) pursuant to Chapter 190 F.S. which lien shall be treated as an ad valorem tax and prorated pursuant to
150       STANDARD K.

Buyer's Initials  S.L.     _B.L._          Page 3 of 10          Seller's Initials  _____  _____
FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar.  All rights reserved.

: formsimplicity

## DISCLOSURES

**10. DISCLOSURES:**

(a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

(b) **PERMITS DISCLOSURE: Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller does not know of any improvements made to the Property which were made without required permits or made pursuant to permits which have not been properly closed.**

(c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or desires additional information regarding mold, Buyer should contact an appropriate professional.

(d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal High Hazard Area" and finished floor elevation is below minimum flood elevation, Buyer may terminate this Contract by delivering written notice to Seller within 20 days after Effective Date, failing which Buyer accepts existing elevation of buildings and flood zone designation of Property.

(e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure required by Section 553.996, F.S.

(f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint rider is mandatory.

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

(h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

(i) **TAX WITHHOLDING:** If Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"), Buyer and Seller will comply with FIRPTA, which may require Seller to provide additional cash at Closing.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as stated in the preceding sentence or otherwise disclosed in writing: (1) Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation; and (2) Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property.

### PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have _____ (if blank, 15) days from Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be immediately returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

Buyer's Initials ___ ___    Page 4 of 10    Seller's Initials ___ ___

formsimplicity

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

ESCROW AGENT AND BROKER

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order. Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14,

268 Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this
269 Contract.

270                                    **DEFAULT AND DISPUTE RESOLUTION**
271 **15. DEFAULT:**
272    (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
273         including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the
274         Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this
275         Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further
276         obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity
277         to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon
278         default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however,
279         Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay
280         to Cooperating Broker.
281    (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
282         reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
283         Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
284         from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
285         performance. This Paragraph 15 shall survive Closing or termination of this Contract.
286 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
287    Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be
288    settled as follows:
289    (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
290         resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under
291         Paragraph 16(b).
292    (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
293         Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
294         The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
295         sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
296         may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16
297         shall survive Closing or termination of this Contract.
298 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
299    by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
300    conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to
301    recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting
302    the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

303                          **STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**
304 **18. STANDARDS:**
305 **A. TITLE:**
306 (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
307 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
308 be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or
309 before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the
310 amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
311 subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
312 prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat
313 or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry;
314 (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in
315 width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent
316 years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum);
317 provided, that none prevent use of the Property for **RESIDENTIAL PURPOSES**. If there exists at Closing any
318 violation of items identified in (b) - (f) above, then the same shall be deemed a title defect. Marketable title shall be
319 determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with
320 law.
321 (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify
322 Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it
323 is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after
324 date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period")
325 after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller,
326 Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will

Buyer's Initials ___SC___   ___BL___        Page 6 of 10        Seller's Initials _____  _____
FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar.  All rights reserved.

### STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)

deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.  If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others; or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

**C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

**D. LEASES:** Seller shall, within 5 days after Inspection Period, furnish to Buyer copies of all written leases and estoppel letters from each tenant specifying nature and duration of tenant's occupancy, rental rates, advanced rent and security deposits paid by tenant, and income and expense statements for preceding 12 months ("Lease Information"). If Seller is unable to obtain estoppel letters from tenant(s), the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit, and Buyer may thereafter contact tenant(s) to confirm such information. If terms of the lease(s) differ materially from Seller's representations, Buyer may deliver written notice to Seller within 5 days after receipt of Lease Information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all original leases to Buyer who shall assume Seller's obligation thereunder.

**E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting; (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller, and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

**F. TIME:** Calendar days shall be used in computing time periods. Any time periods provided for in this Contract which shall end on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property is located) of the next business day. **Time is of the essence in this Contract.**

**G. FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the obligation is delayed, caused or prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God, unusual transportation delays, wars, insurrections, acts of terrorism, and any other cause not reasonably within control of Buyer or Seller, and which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended for the period that the Force Majeure prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than 14 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

**H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.

**I.   CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

**(i) LOCATION:** Closing will take place in the county where the Real Property is located at the office of the attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title

387 **STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)**
388 insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic means.
389 **(ii) CLOSING DOCUMENTS:** At Closing, Seller shall furnish and pay for, as applicable, deed, bill of sale,
390 certificate of title, construction lien affidavit, owner's possession affidavit, assignments of leases, and corrective
391 instruments. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract.
392 Buyer shall furnish and pay for, as applicable, mortgage, mortgage note, security agreement, financing statements,
393 survey, base elevation certification, and other documents required by Buyer's lender.
394 **(iii) PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title
395 Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the
396 escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to**
397 **COLLECTION of all closing funds**, disburse at Closing the brokerage fees to Broker and the net sale proceeds to
398 Seller.
399 **J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
400 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow
401 and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period
402 of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer
403 shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt
404 of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds
405 paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with
406 such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to
407 Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the
408 Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be
409 available to Buyer by virtue of warranties contained in the deed or bill of sale.
410 **K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
411 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
412 (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
413 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in
414 which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by
415 prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to
416 Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current
417 year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing
418 occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be
419 prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then
420 taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of
421 year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated
422 based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which,
423 request shall be made to the County Property Appraiser for an informal assessment taking into account available
424 exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of
425 current year's tax bill. This STANDARD K shall survive Closing.
426 **L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
427 shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
428 including a walk-through (or follow-up walk-through if necessary) prior to Closing.
429 **M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
430 ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
431 exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
432 pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated
433 cost to complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of
434 restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
435 Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
436 Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
437 Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
438 with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.
439 **N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneous with
440 Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
441 in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
442 cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
443 upon, nor extended or delayed by, such Exchange.
444 **O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; COPIES:** Neither this Contract nor any
445 notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the
446 parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural

Buyer's Initials _____ _SC_ _____ _BC_ _____    Page 8 of 10    Seller's Initials _____    _____
FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar  All rights reserved.

formsimplicity

447  **STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)**
448 and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real
449 estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in
450 writing and may be made by mail, personal delivery or electronic (including "pdf") media. A legible facsimile or
451 electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an
452 original.
453 **P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
454 of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
455 representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
456 in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
457 to be bound by it.
458 **Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
459 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
460 rights.
461 **R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
462 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.
463 **S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or received,**
464 **including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent**
465 **or Closing Agent. Closing and disbursement of funds and delivery of Closing documents may be delayed by**
466 **Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**
467 **T. LOAN COMMITMENT:** "Loan Commitment" means a statement by the lender setting forth the terms and
468 conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower.
469 **U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of
470 Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county in
471 which the Real Property is located.
472 **X. BUYER WAIVER OF CLAIMS:** *Buyer waives any claims against Seller and, to the extent permitted by*
473 *law, against any real estate licensee involved in the negotiation of this Contract, for any defects or other*
474 *damage that may exist at Closing of this Contract and be subsequently discovered by the Buyer or anyone*
475 *claiming by, through, under or against the Buyer.*

476                         **ADDENDA AND ADDITIONAL TERMS**
477 **19. ADDENDA:** The following additional terms are included in the attached addenda and incorporated into this
478* Contract (**Check if applicable**)

- [ ] A. Condominium Assn.
- [x] B. Homeowners' Assn.
- [ ] C. Seller Financing
- [ ] D. Mortgage Assumption
- [ ] E. FHA/VA Financing
- [ ] F. Appraisal Contingency
- [ ] G. Short Sale
- [ ] H. Homeowners' Insurance
- [ ] I. FIRPTA
- [ ] J. Interest-Bearing Acct.
- [ ] K. RESERVED

- [ ] L. RESERVED
- [ ] M. Defective Drywall
- [ ] N. Coastal Construction Control Line
- [ ] O. Insulation Disclosure
- [ ] P. Pre-1978 Housing Statement (Lead Based Paint)
- [ ] Q. Housing for Older Persons

- [ ] R. Rezoning
- [ ] S. Lease Purchase/ Lease Option
- [ ] T. Pre-Closing Occupancy
- [ ] U. Post-Closing Occupancy
- [ ] V. Sale of Buyer's Property
- [ ] W. Back-up Contract
- [ ] X. Kick-out Clause

- [ ] Y. Seller's Attorney Approval
- [ ] Z. Buyer's Attorney Approval
- [ ] AA. Licensee-Personal Interest in Property
- [ ] BB. Binding Arbitration
- [ ] Other _____
- [ ] ~~PAINT~~
- [ ] ~~title~~

479* **20. ADDITIONAL TERMS:** -THIS ADDENDUM is an integral and dependent part of that certain sale and purchase
480* contract (the "Contract") entered into by and between the undersigned parties. The parties
481* hereby amend the Contract as follows:
482* 1. The Seller has an ownership interest in an to this property, which is a Realtor involved in this transaction and
483* which has an active real estate license.
484* 2. The parties agree that this Contract is contingent upon seller's acquisition of title to the subject real property
485* within 30 days of the effective date of this Contract. If this condition is not met, either party may rescind this
486* Contract by giving written notice thereof to the other party, whereupon all earnest money deposits shall forthwith
487* be returned to purchaser, and thereupon purchaser and seller shall be relieved, as to each other, of all obligations
488* under this Contract.
489* -Closing to be 30 days upon acceptance. -The buyer will contribute 3% of purchase price.
490* _____
491* _____
492* _____
493* _____

Buyer's Initials _____ _____          Page 9 of 10          Seller's Initials _____ _____
FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar.  All rights reserved.

formsimplicity

494    **COUNTER-OFFER/REJECTION**
495* ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
496  deliver a copy of the acceptance to Seller).
497* ☐ Seller rejects Buyer's offer.

498  **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE**
499  **OF AN ATTORNEY PRIOR TO SIGNING.**

500  **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

501  *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms*
502  *and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions*
503  *should be negotiated based upon the respective interests, objectives and bargaining positions of all interested*
504  *persons.*

505  AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO
506  BE COMPLETED.

507* Buyer: _____    Date: _____

508* Buyer: _____    Date: _____

509* Seller: _____    Date: _____

510* Seller: _____    Date: _____

511  Buyer's address for purposes of notice          Seller's address for purposes of notice
512* _____    **7463 SW 188 Ter, Cutler Bay FL 33157**
513* _____    _____
514* _____    _____

515  **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled
516  to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent
517  to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
518  agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
519  retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
520  made by Seller or Listing Broker to Cooperating Brokers.

521* _____    _____
522  **Cooperating Sales Associate, if any**          **Listing Sales Associate**

523* _____    _____ **Flocar Investment Group Corp** _____
524  **Cooperating Broker, if any**                **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar.  All rights reserved.

ʦ formsimplicity